UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80372-CIV-MARRA

MADELAINE MARTORELLA,
individually and for all
others similarly situated,

    Plaintiff,

vs.

DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS INDENTURE
TRUSTEE FOR AMERICAN HOME
MORTGAGE INVESTMENT TRUST
2006-1 AND AMERICAN HOME
MORTGAGE SERVICING, INC.,

    Defendants.
_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS

THIS MATTER is before the Court on AHMSI and Deutsche Bank's Motion to Dismiss [DE 7].  The Court has carefully considered the motion, response, reply, oral argument of counsel at a hearing held on February 27, 2013, and is otherwise fully advised in the premises.

**Introduction**

Plaintiff, Madelaine Martorella ("Martorella"), has brought this action against Defendants Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-1 ("Deutsche Bank") and American Home Mortgage Servicing, Inc. ("AHMSI") (collectively, "Defendants").  This action

arises out of Defendants' participation in an alleged scheme to charge Martorella and the members of the putative classes for the cost of force-placed insurance coverage on their property at grossly excessive rates.  Martorella alleges that Defendants acted in bad faith by charging for force-placed insurance at exorbitantly high premiums that bear no relationship to the insurable risk in return for kickbacks from the insurance carriers.  As a result, Defendants and their insurance carriers allegedly reaped huge profits from insurance policies which cost mortgagors many times the market rate for competitively priced insurance policies while providing significantly less insurance coverage.  Defendants move to dismiss the Class Action Complaint ("Complaint" or "Compl.") filed by Martorella and to strike the class action allegations contained therein.

**Standard of Review**

For purposes of deciding a motion to dismiss, the Court accepts the allegations of the complaint as true and views the facts in the light most favorable to it.  *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).  A plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).  "[W]hile notice pleading

may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

**Summary of the Factual Allegations**

Martorella is the owner and mortgagor of property located in Palm Beach County, Florida ("Martorella Property"). Compl. ¶ 5. Deutsche Bank holds the standard form note and mortgage on the Martorella Property and has appointed AHMSI to act as its agent to service Martorella's loan. Compl. ¶¶ 6-7. When it assumed the servicing of Martorella's loan, AHMSI assumed the obligations under Martorella's standard form note and mortgage. Compl. ¶ 8.

Under the standard form mortgage entered into by Martorella and the members of the class, if the homeowner fails to maintain property insurance coverage, then AHMSI may step in and buy a property insurance policy on behalf of the homeowner so that the home remains insured. Compl. ¶ 10. Such policies commonly are referred to as "force-placed insurance." However, in exercising their right to protect the lender's interest in the property owned by Martorella and the members of the class, Plaintiff asserts that Defendants had to act consistently with the covenant of good faith and fair dealing implied in the mortgages. Thus, Plaintiff

claims Defendants were required to exercise their discretion in good faith and within reasonable limits consistent with the parties' purpose in contracting.  Compl. ¶ 11.

It is further alleged that in early 2009, AHMSI, acting as agent for Deutsche Bank, wrongly claimed that Martorella did not have insurance on her property and it purchased force-placed insurance through a specialty insurance carrier named Empire Indemnity Insurance Company ("Empire").  Compl. ¶ 12.  As a result, Martorella's insurance premium increased nearly fourfold, as reflected by the increase in her monthly escrow fees from $499.31 per month to $1,924.81 per month.  Compl. ¶ 13.  Martorella immediately notified AHMSI of its error and provided AHMSI with proof of her insurance coverage on the property.  Compl. ¶ 14.  Despite this notification, Deutsche Bank foreclosed on the Martorella Property in June 2009, which foreclosure stemmed from the fact that AHMSI had wrongly quadrupled her monthly escrow and refused to accept the correct monthly payment from her.  Compl. ¶ 15.  In August 2009, AHMSI acknowledged its error and notified Martorella that the force-placed policy had been cancelled.  However, AHMSI refused to remove the charges for one month's coverage, even though Martorella had continuous coverage.  Compl. ¶ 16.

Plaintiff claims that force-placed insurance is two to four times (but sometimes up to ten times) more costly than regular hazard insurance policies.  At the same time, force-placed insurance policies provide less comprehensive insurance coverage than a typical homeowner's policy.  Compl. ¶ 17.  Plaintiff asserts that the premiums imposed in this case for force-placed insurance are neither bona-fide nor reasonable,

and do not bear a reasonable relationship to the insurable risk.  *Id*.

It is also alleged that the servicers' wrongful insurance practices stem from a conflict of interest that aligns servicers and their force-place-insurer partners against the borrowers.  Force-placed insurance is frequently placed with an insurance carrier in exchange for commissions, reinsurance fees or other remuneration paid by the insurance company to the mortgage servicers, such as AHMSI.  Compl. ¶ 18.  Instead of purchasing less expensive policies, which would benefit the borrowers, the mortgage servicers such as AHMSI place the policies with the force-placed insurers that pay them commissions, or other kickbacks, thus driving up the premiums for force-placed insurance.  *Id*.  The interests of the servicers and the insurance carriers are so aligned, in fact, that in many cases, there ceases to be a clear difference between the entity purchasing insurance and the entity selling it.  Compl. ¶ 21.

AHMSI engaged in the foregoing abusive practices when it force-placed insurance upon the Martorella Property, which benefitted AHMSI.  Compl. ¶ 22.  Martorella claims her experience was typical of other members of the class, many of whom had insurance force placed in error, and all of whom were charged grossly excessive premiums for their force-placed insurance policies.  Compl. ¶¶ 132, 31-32.

Martorella asserts four different claims for relief in her Complaint.  She alleges that

- Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA") (Counts I-IV);

- Defendants breached the mortgage agreement and the covenant of good faith and fair dealing implied therein (Counts V-VIII);

- Defendants violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 ("FCCPA") (Counts IX-X); and

- Defendant AHMSI was unjustly enriched (Count XI).

Martorella brings this case for herself and on behalf of a class of all individuals in Florida who have had residential mortgages serviced by AHMSI, as agent for Deutsche Bank, or another note holder, and for whom AHMSI purchased force-placed insurance from November 1, 2007 to the present.  Compl ¶ 25.  She also brings this case on behalf of three sub-classes of individuals in Florida who have had residential mortgages serviced by AHMSI.  Compl. ¶ 26.

## Discussion

1. **Florida Deceptive and Unfair Trade Practices Act**

Defendants assert Counts I through IV (FDUTPA violations) fail because (a) the conduct alleged does not involve trade or commerce; (b) Martorella identifies no deceptive act; and (c) neither AHMSI nor Deutsche Bank's alleged conduct is linked to an injury or any cognizable damages.

Although not specifically identified in the statute, there are three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Borchardt v. Mako Marine Int'l, Inc.*, 2009 WL 3856678, *5 (S.D. Fla. Nov. 17, 2009) (quoting *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla. Dist. Ct. App. 2008).  The Court

finds the Complaint adequately states causes of action for violations of FDUTPA.

A. **Allegation of Deceptive or Unfair Act**

Defendants argue that there were no deceptive or unfair acts with regard to the imposition of force-placed insurance on the Martorella Property because the terms of the mortgages permitted the placing of such insurance. In making that argument, Defendants mischaracterize the allegations in the Complaint. Plaintiff does not allege that Defendants cannot force-place insurance in accordance with the mortgages' terms, but rather, that they violated the FDUTPA by purchasing excessively priced insurance policies that provide less comprehensive coverage, while keeping a portion of those excessive premiums as commissions or other remuneration.

Under the FDUTPA, an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. Dist. Ct. App. 2001). The allegations that the lender/servicers have charged excessive and/or unreasonable amounts for force-placed insurance, for which they were paid commissions or other remunerations, supports Plaintiff's claim under the unfairness prong of the FDUTPA. *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1269-74 (S.D. Fla. 2006) (although the Plaintiff may not properly argue that the allegedly unreasonable pricing scheme was deceptive, she may potentially raise the issue of whether the conduct is "unfair" under the FDUTPA); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. Dist. Ct. App. 2000) (reversing trial

court's order denying class certification where plaintiff alleged violations of FDUTPA because of the cruise line's alleged failure to disclose that it would retain portions of the port charges).

      B.    **In the Course of Trade or Commerce**

Defendants also argue that Plaintiff has not established that any unfair or deceptive act was committed in trade or commerce. Defendants do not disagree that under Fla. Stat. § 501.203(8), "'trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." However, they argue that the conduct at issue here - which they describe as "mortgage loan servicing" - was not in the course of trade or commerce. The court rejects Defendants' assertions.

The conduct challenged in the Complaint is Defendants' provision of insurance (a product) to Martorella for which Martorella paid excessive premiums and Defendants received kickbacks in the form of commissions. Such conduct falls squarely within "the statute's broad definition of 'trade or commerce.'" *Schauer v. Gen. Motors Acceptance Corp.*, 819 So.2d 809, 812 (Fla. Dist. Ct. App. 2002) (Defendant's alleged actions of willfully harassing Plaintiff and his family with respect to the collection of its debt fell within FDUTPA's broad definition of "trade or commerce"); *see also Losure v. Capital One Servs., Inc.*, 2006 WL 166520, *3 (M.D. Fla. Jan. 23, 2006) (credit card holder's allegation that Defendant, with the

knowledge that the debt was satisfied, attempted to collect the debt by willfully harassing him at home and at his place of employment through letters and telephone calls adequately plead a claim under FDUTPA); *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1274 (S.D. Fla. 2005) ("the relationship between the parties is irrelevant; the only relevant inquiry being whether the defendant's violation of the FDUTPA has harmed plaintiff. Because Plaintiff has alleged that she was injured by Defendants' unfair practices, Count IV states a claim.") Indeed, the transactions at issue fall comfortably within the definition of trade or commerce because it is alleged Martorella was the "purchaser" of insurance that Defendants "provided, offered, or distributed." *Hughes Supply, Inc. v. Cont'l Recovery Servs. Corp.*, 2007 WL 2120318, *2 (M.D. Fla. July 23, 2007).

C.  **Causation and Damages**

Defendants also argue that Plaintiff has not adequately alleged causation and recoverable damages. The Court disagrees.

Martorella alleges that Defendants' unfair practices caused her damage when Defendants erroneously placed insurance coverage on the Martorella Property at grossly excessive and exorbitant insurance premiums which were nearly four times higher than the premiums under her homeowners' policy. Compl. ¶¶ 12-16. Plaintiff acknowledges that Defendants ultimately admitted their error, but alleges that they refused to reimburse her for all the excessive premiums she paid. Compl. ¶ 16. This is sufficient to demonstrate causation. *See In re Chiquita Brands Int'l, Inc. Alien Tort*

*Statute & S'holder Deriv. Litig.*, 690 F. Supp. 2d 1296, 1314 (S.D. Fla. 2010) (quoting *Zivojinovich v. Barner*, 525 F.3d 1059, 1069 (11th Cir. 2008) ("[i]f a reasonably prudent person could foresee that a harm like the one that the plaintiff suffered might result from his or her actions, then there is proximate causation").

Martorella states in her response that she agrees that the FDUTPA only allows for recovery of "actual damages" and not for "consequential damages." However, Plaintiff seeks to recover her actual damages, the payment which Defendants allegedly assessed against her wrongfully and have failed to refund to her. Plaintiff is also able to pursue declaratory and injunctive relief under FDUTPA.

2.   **Covenant of Good Faith and Fair Dealing**

A covenant of good faith and fair dealing is implied in every contract. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *County of Brevard v. Miorelli Engineering, Inc.*, 703 So.2d 1049, 1050 (Fla. 1997). The covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract. *Burger King*, 169 F.3d at 1315.

Generally, a claim for breach of the implied covenant cannot be maintained in absence of an alleged breach of an express contractual term. *Centurion Air Cargo, Inc. v. United Parcel Svc. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) (the "covenant" is not an independent contract term); *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990) (it is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when

performance is maintained *de jure*); *Burger King*, 169 F.3d at 1316. The covenant applies, however, when the propriety of the conduct is not resolved by the express terms of the contract, and its application does not contradict the express terms of the contract. *See Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097-98 (Fla. Dist. Ct. App. 1999) ("*Cox*") (written loading contracts were silent with regard to the methodology or standards to be used by the defendant in exercising its discretion to assign loads for transport); *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd., et al.*, 2011 WL 1233106, *3-4 (S.D. Fla. March 30, 2011) (allowing the count to proceed solely as to the allegation that Defendant appointed conflicted high-level employees to the Funds' board).

Where, as here, a contract vests a party with discretion, the implied duty of good faith and fair dealing attaches as a gap-filling default rule. *Speedway SuperAm., LLC v. Tropic Enters., Inc.*, 966 So.2d 1, 3 (Fla. Dist. Ct. App. 2007) ("Despite broad characterizations of the implied covenant of good faith, we have recognized that it 'is a gap-filling default rule,' which comes into play 'when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards'") (quoting *Publix Super Markets, Inc. v. Wilder Corp. of Del.*, 876 So.2d 652, 654-55 (Fla. Dist. Ct. App. 2004). In filling the gaps, the covenant of good faith and fair dealing imposes a duty upon the party invested with discretion to act in a commercially reasonable manner that satisfies the reasonable expectations of the contracting parties. *Id*. As the court

explained in *Cox*, in considering the application of the implied duty of good faith to that action:

> [U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

*Cox*, 732 So.2d at 1097. "Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Id*. at 1097-98; *see also Lancer Offshore*, 2011 WL 1233106 at *3-4.

Here, the force-placed insurance clause granted Defendants discretion in determining whether to purchase force-placed insurance after a policy had lapsed, and under what terms. Plaintiff's allegations that Defendants failed to observe reasonable limits in exercising their discretion to force-placing policies at grossly excessive premiums in exchange for kickbacks from the insurance carriers fully states a claim for breach of the covenant of good faith and fair dealing. *Kunzelmann v. Wells Fargo Bank, N.A.*, 11-CV-81373-DMM, 2012 WL 2003337, *6 (S.D. Fla. June 4, 2012). Ultimately, whether Defendants acted in good faith is a question of fact to be resolved at trial. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1316 (S.D. Fla. 2010) (citing *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1364-66

(N.D. Ga. 2008) for the proposition that good faith is a question of fact to be developed on discovery); *see also National Franchisee Ass'n v. Burger King Corp.*, 2010 WL 3749219, *5 (S.D. Fla. Sept. 20, 2010) (documents are discoverable if they may assist in determining whether Defendant's decision making process was performed in good faith); *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1300, 1303 (S.D. Fla. 1999)("[w]hether the covenant has been breached is generally a question of fact").

3.  **Florida Consumer Collection Practices Act**

Martorella alleges in Counts IX and X that AHMSI and Deutsche Bank violated Fla. Stat. § 559.72(9), which makes it unlawful to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows the right does not exist." Defendants argue that Plaintiff has not stated a claim under the FCCPA for two reasons: (1) that they were not collecting a debt but were enforcing a security interest (the mortgage) and (2) that Plaintiff has not adequately pled actual knowledge of the violations by Defendants. The Court rejects these arguments.

The Eleventh Circuit, in rejecting a law firm defendant's argument that it was not engaged in debt collection explained:

> The rule the Ellis law firm asks us to adopt would exempt from the provisions of § 1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the

> underlying debt.  That rule would create a loophole in the FDCPA.[1]  A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest.  The practical result would be that the Act would apply only to efforts to collect unsecured debts.  So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA.  That can't be right.  It isn't.  A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.  A debt is still a "debt" even if it is secured.

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012).  Therefore, Defendants' communication to Martorella that she was required to pay for a force-placed insurance policy on her property falls within the ambit of debt collection for purposes of stating a cause of action pursuant to the Florida Consumer Collection Practices Act.  Compl. ¶ 131.

As for the argument that Plaintiff has not alleged actual knowledge on the part of Defendants, Plaintiff relies upon her assertion that she "notified AHMSI of its error and provided AHMSI with proof of her insurance coverage."  Compl. ¶ 14.  Even after this notification, Plaintiff asserts Defendants proceeded with their debt collection activities, and despite acknowledging their error, refused to refund the premium for one month.  Compl. ¶¶ 15-16.  Actual knowledge is adequately alleged.

---

[1] In Florida, consumer debt collection practices are regulated by both the FCCPA and the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p (FDCPA). Both acts generally apply to the same types of conduct, and Florida courts must give "great weight" to federal interpretations of the FDCPA when interpreting and applying the FCCPA. § 559.77(5).  *Read v. MFP, Inc.*, 85 So. 3d 1151, 1153 (Fla. Dist. Ct. App. 2012).

4.  **Unjust Enrichment**

Defendants contend Plaintiff's unjust enrichment claim in Count XI should be dismissed because an express contract exists.  Florida courts have held that "'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'"  *Alberta Ltd. v. Netpaying, Inc.*, 2011 WL 1103635, at *5 (M.D. Fla.  Mar. 24, 2011) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. Dist. Ct. App. 2008) (collecting cases)); *see also Zarrella v. Pac. Life Ins. Co.*, 755 F.  Supp. 2d 1218, 1227 (S.D. Fla. 2010).

However, a party may plead in the alternative for relief under an express contract and for unjust enrichment.  *See ThunderWave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562, 1566 (S.D. Fla. 1997) (citing *Hazen v. Cobb-Vaughan Motor Co.*, 96 Fla. 151, 117 So. 853, 857–58 (Fla. 1928)).  But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid.  *See Zarrella*, 2010 WL 4663296, at *7 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326-27  (S.D. Fla. 2000) (quoting *Gary v. D. Agustini & Asociados, S.A.*, 865 F. Supp. 818, 827 (S.D. Fla. 1994)); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) (although Rule 8 permits alternative pleading, "an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the

subject of the dispute"); *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007) ("a quasi-contractual claim fails upon a showing that an express contract exists").

Defendants assert that "no party contests the existence of the contract governing this dispute. AHMSI purchased [the force-placed insurance] as Deutsche Bank's agent." DE 7 at 16. Plaintiff may, however, maintain an equitable unjust enrichment claim in the alternative to her legal claims against Defendants. *Kunzelmann v. Wells Fargo Bank, N.A.*, 11-CV-81373-DMM, 2012 WL 2003337, *6 (S.D. Fla. June 4, 2012). Federal Rules of Civil Procedure 8(a) and 8(e)(2) specifically authorize a plaintiff to plead causes of action in the alternative. *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("[a]lthough equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief"). In addition, it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails. *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998). Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature.

5. **Class Action Allegations**

Defendants move to dismiss the class allegations arguing that a class could never be certified because Martorella is atypical of most putative class members, and

individual issues would predominate the remainder of Martorella's claims.

"The question of class certification is generally not addressed on a motion to dismiss." *Chaney v. Crystal Beach Capital, LLC*, 2011 WL 17639, at *2 (M.D. Fla. 2011). "[T]he shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form." *Motisola Malikha Abdallah v. Coca-Cola Co.*, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999) (citing *Jones v. Diamond*, 519 F.2d 1090, 1098 (5th Cir.1975)). As Plaintiff has not yet filed a motion for class certification, the Court will not make a determination regarding class certification at this time.

### Conclusion

In accordance with the findings above, it is hereby

**ORDERED AND ADJUDGED** that AHMSI and Deutsche Bank's Motion to Dismiss **[DE 7] is denied.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th day of March, 2013.

_____
KENNETH A. MARRA
United States District Judge